Case number 15-3060 et al. United States of America v. Calvin Stoddard, Appellant. Mr. Wilcox for the Appellants, Mr. Smith for the Appellee. Good morning. Good morning, Judge Griffith, and may it please the Court. Jason Wilcox of Kirkland & Ellis on behalf of the Appellants. The defendants in these consolidated criminal appeals were all erroneously swept up in a conspiracy investigation that rightly focused primarily on others who were actually major drug dealers in the Washington, D.C. area. I want to discuss several flaws this morning and the underlying convictions in a moment, but let me address the sentencing issues that cut across both Stoddard's and Woodruff's appeals first. As the government itself consistently argued below, the enhanced statutory minimum and maximum sentences for distributing more than 100 grams of heroin are triggered only if that amount is personally attributable to an individual defendant. And where in the statute does it say that? Well, I think that first off, what you need to step back to, Judge Griffith, is the background principles of conspiratorial liability, and I think that that's what I mean. No, no, no. Let's start with the language of the statute. What were they convicted of? What they were convicted of, if you look at the statute, is that they were convicted of conspiring to distribute – sorry, the text of Section 846 says what they were convicted of is conspiring to commit any defense defined in the subchapter. And then to be guilty of conspiracy, all you need to be guilty of under this Court's precedence, such as Gaskin's, is agreeing to distribute some unspecified quantity of drugs. So all that they were convicted of was distributing an unspecified quantity of drugs. I thought they were convicted under 1B1 of conspiracy to distribute 100 grams or more of heroin. So the underlying 846 conviction only doesn't require individualized finding. There were then questions that were asked to the jury about whether the conspiracy as a whole involved 100 grams or more. Is that the language of the jury forum was conspiracy as a whole? The language of the jury forum, which you can see A92 and 93, is that first off, they were asked whether there was a conspiracy, and then they were asked, does the jury unanimously find that a mixture or substance containing the controlled substance heroin was a subject of the conspiracy? And then the jury was asked, does the jury unanimously find that the amount of the mixture of substance containing heroin was 100 grams or more? Now what this Court has said in cases like Tebron, however, is that just because an overarching conspiracy involves 100 grams or more, there still needs to be specific individualized findings because an overarching conspiracy agreement can have a dense web of underlying agreements. And so that's why in guidelines cases, this Court doesn't just look to the underlying offense of conviction, but instead makes individualized findings for each individual defendant. And that's the rule we're asking for here under the statute as well. Are you, just so we're clear here, are you saying that there has to be a finding of what is reasonably foreseeable with respect to the conspiracy for each defendant so that the jury has to determine what was reasonably foreseeable for that defendant? Yes, what the jury needs to find, Your Honor, is they either need to find that the specific conspiratorial agreement was to distribute that amount of drugs, not just to enter into a conspiracy to distribute heroin or some other drug in general. And then if that's not the specific conspiratorial agreement, then they need to find whether it was reasonably foreseeable in light of what the underlying agreement was that that quantity of drugs would be distributed by other members of the conspiracy. So what's wrong with this reading of the verdict form? And this is a rhetorical question. I'd really like you to help me with this. So as I read the verdict form, what's wrong with this reading, that the jury found them guilty of conspiracy to distribute more than 100 grams of heroin? They joined a conspiracy that distributed more than 100 grams of heroin. So I think that the main problem with that reading of the verdict form is that that is not what the government taught the verdict form was asking the jury to find, and that's not what the – What's critical here is what the jury did, right? Well, right, but I think, Your Honor, that if the government doesn't think that that's what the jury was doing when it made that finding, if the district court didn't think that's what the jury was doing when it made that finding, I think it's unlikely that that's what the jury thought its verdict was being rendered on. It was making a finding that the conspiracy as a whole here, which involved many people other than just the three appellants in this case, involved an amount that was greater than 100 grams. And as I read the last – the only question that went to the jury that involves quantity is the last one. That is correct. The rest of them don't involve quantity. That's correct. And the one that directly speaks to quantity asks the jury whether it determines, as a matter of fact, that more than 100 grams was involved, not whether ex ante the agreement was to distribute more than 100 grams. I think that's right, Judge Srinivasan. So once again, that was just a finding about what the conspiracy actually involved. I mean, sorry, what did the underlying conduct actually involve? You're exactly right. And not what did they agree to do and what was reasonably foreseeable to them. So I have the following question on this issue. So the government makes the point that a number of courts of appeals, and I don't know that there's a court of appeals that has decided to the contrary, in the statutory maximum context. So we have a statutory minimum issue. Right. Then the same issue arises with the statutory maximum under the same statutory language, basically. And in the statutory maximum context, it looks like the majority, and I think maybe uniform rule among the courts of appeals, is that the statutory maximum depends on the amount that's attributed to the conspiracy as a whole, not the amount that's attributed to an individual defendant, either by virtue of agreement or by virtue of Pinkerton. So it seems like under the courts of appeals have decided that under the maximum context, it's not the rule that you want. And that seems a little bit odd to me because the statutory language doesn't afford any basis for drawing a distinction on this issue, on this issue between minimum and maximum. It seems like either with respect to both the minimum and the maximum, we look only to an individual defendant, or with respect to both the minimum and the maximum, we look conspiracy-wide. So I agree with that. I think it should be. I don't think that there's any basis in the statute for this split rule, which I agree does exist in some court of appeals. I think at least the Fourth Circuit has adopted the rule I'm advocating for here, for both the minimum and the maximum. But I agree there are some circuits that have adopted the rule that you're referring to. And generally those are based on pre-apprendi precedent that they're just continuing to follow. And they're just saying, well, pre-apprendi, the way that we view the world is working, was we wanted a finding to be made about the offense as a whole to trigger the statutory maximum. And then we'd rely on the district court judge to get it right in the guidelines context. And so now all we'll do is we'll just swap out the jury for the judge. And they haven't rethought those underlying pre-apprendi precedents or whether they make sense. But it seems like a different issue. There's one question as to who makes the decision whether it's the judge or jury. There's another question as to what they're supposed to be deciding, whether you look to the individual defendant or you look to the conspiracy as a whole. And with respect to the latter one, at least in those courts of appeals, I take your point that there's some courts that have drawn the dichotomy. But in those courts of appeals that have held that the maximum depends on the conspiracy as a whole rather than an individual defendant. Do you think that there's a basis for saying that those decisions are right but you're still right? Or do you think that your argument just means that those decisions are wrong? So I think that it's very difficult to square a split system with the statutory text. The statutory text doesn't seem to contemplate that the minimum and the maximum would vary based on whether it's an offense-specific or a defendant-specific findings. I think it's hard to square with those. What I would say is most of the courts that have adopted that rule for the maximum have generally not had a lot of reasoning behind that. So the courts that have really grappled with this have grappled with it in the context of the minimums, whether it's the Fourth Circuit and its line of precedent dealing with this, most recently in Collins but stretching back all the way to 1994, or whether it's the Sixth Circuit taking the opposite approach in cases, once again reaching back to the 1990s, and the Sixth Circuit recently trying to take this issue on block and ultimately being unable to resolve it. So when you say that those courts haven't really grappled with it, is that your nice way of saying that you think those courts are wrong? That is my nice way, yes, of Judge Srinivasan saying, I think those courts are wrong and I think that the courts who have thought really hard about it, like the Fourth Circuit, have gotten to the right answer, which is completely consistent with the underlying principles of conspiratorial liability that just generally apply across the board. And if there's other questions on this, I'm certainly happy to answer it, but otherwise I'd like to turn to the underlying convictions here and talk about those for a couple of minutes. So turning first to the wiretaps, the red issue here, I think this case really illustrates why this court has said in decisions like Carter that it will closely scrutinize whether a wiretap application complied with a necessity requirement that exists in the statute. Here the government omitted material facts from its wiretap affidavit that could have significantly influenced whether the district court decided to issue the wiretap warrant in the first place. Specifically, the government told the district court that, well, we can't really approach members of the conspiracy and try and turn them into either members who are working with us or arrest them, because people generally lawyer up and won't talk to us. But what the government didn't tell the district court judge was that Washington, the individual that the government was calling the main supplier of heroin in the area, had a consistent pattern of cooperating with the United States and with FBI agents and that he'd done that consistently, and therefore he's differently situated than the average person, who maybe the average person wouldn't cooperate, but they had special knowledge here that they just didn't share with the government. As this court has said in decisions like Carter and Becton, omitting material facts is a reason why a wiretap affidavit may be insufficient and a reason to find that those wiretaps should not have been omitted and should have been suppressed. In addition, I'll just say, once you look at the wiretap itself have you got some cases in which we have ruled that there was an abusive discretion for inadequate finding and necessity? That's a big mountain you're climbing. It is a big mountain. In this case, this court hasn't done it, at least in a very long time. But what I would say is they haven't done it for a long time because generally they're pointing out things like the government hasn't omitted material facts, unlike here where there was that material omission. And in Ninth Circuit decisions like Blackmun, which we cite in our brief, the Ninth Circuit has found that when you have omitting material facts, when you're relying on boilerplate statements, that that is enough to overturn a wiretap affidavit and to find that there was an abusive discretion. But did the Ninth Circuit, was that case, was there like a Franks-type analysis? Because you're not really making a Franks argument in your brief based on some sort of government misleading the district court, right? Well, I mean, I think we do make an argument in our brief that there was, that the government omitted material facts from its affidavit. I think we do make that argument in our brief and lay that out. In the Ninth Circuit case, it didn't have the expert commentary. Well, omitting material facts and failing to show necessity, though, are two completely different things. I didn't really read your brief as saying that the omission of material facts was misleading the court. Your brief was just saying that there weren't enough facts alleged really to show necessity. Well, I think that there's two parts to the necessity inquiry. I think number one is, were there enough facts here? And we have an argument about whether there were enough facts here based on kind of the general boilerplate nature of the allegations here. But there's the separate requirement that the warrant, the application, and the affidavit must have a full and complete statement of the facts showing that necessity is satisfied here. And so we're also arguing that there wasn't a full and complete statement of the facts as the statute requires. If I could just turn now briefly, I can see that I'm quickly approaching the end of my time. I'd like to turn to Cobble's money laundering conviction for just a moment. Defendant Cobble was acquitted. Before you get there, and I think you'll have time to do it, but can I just ask you on the Rule 609 issue? Oh, of course. I haven't talked about the Rule 609 issue. So the only question I have about that is your response to the issue that's come up late in the briefing at least on the applicability of the Supreme Court's decision in Luce, which the government argues precludes our review of it because there was no testimony in this case. Yes, I think I have two responses to the Supreme Court's decision in Luce. Number one is since the government didn't raise it until the 28-J letter, the government waived that argument, and it certainly is an argument that can be waived. And so I think it's off the table, and this Court can just reach the merits of the issue without needing to get into the waiver, without needing to worry about whether Luce says that you can review it or not because of that waiver. If you were going to reach the merits and decide whether Luce precludes the argument or not, I would say what distinguishes this case from Luce is Luce noted that when an issue has constitutional dimension that that may present a different question. And the argument that we made in our briefing was that this does have a constitutional dimension and that it wasn't just an error to admit this testimony, but it was an error that kept Woodruff from actually taking the stand to testify in his own defense. So I wasn't sure I followed that because it seems like that argument was equally in play in Luce and would equally be in play in any case in which a defendant decides not to testify because of a ruling to admit that a prior conviction would be admitted if he or she would testify. You'd always have a constitutional overlay in the way that you're describing it. So I take your point, Judge Srinivasan. What I would say is there's nothing in Luce that suggests that it was actually the argument the defendant was making there. And the Supreme Court was specifically distinguishing cases where defendants had made those type of arguments until its prior precedent for the 1970s that had been making those kind of distinctions when saying, well, that's not what's at play here. The only thing that was at play here was the Rule 609 issue. And similarly, just to address also the one case from this Court that the government cites, the government in that case, it was actually the defense counsel even before the ruling said, we're not going to call those witnesses. It's very unlikely we're going to call these witnesses. And that was really important to the Court's finding in that case. Whereas here, counsel was repeatedly asking the district court, please rule on this Rule 609 issue. My client's really being prejudiced by not knowing the answer to this Rule 609 issue. And so I think that you have evidence that isn't present in those other cases that this really was a significant factor influencing whether Woodruff was going to take the stand or not to testify in his own defense on issues that really only he could supply the answer to. Let's hear about Mr. Cobble. Okay, great. So turning to Mr. Cobble and his money laundering conviction, I don't think any reasonable jury could have found that Cobble either conspired to disguise or conceal the illegal source of the funds that Washington used to pay for the SUV or that he specifically intended to. Did you make a promotion argument in your briefs? As I read your briefs and the strategy, the trial was all focused on concealment. So the government strategy, largely the trial, it was focused on concealment. And then the government in its response brief pointed out that, well, we could also win under the promotion prong. And we did make some arguments in our reply brief then about the promotion prong and rebutting that argument that they could have found him guilty under the promotion prong. And also our arguments about cases like law that we talk about in our opening brief and a definitive that we talk about in our opening brief, which are when you have an innocent explanation for conduct, the government needs to have evidence to rebut that innocent explanation or they can't find someone guilty of money laundering, cut across the issues and go to both the concealment prong and the promotion prong. What's your strongest argument that there was insufficient evidence on the promotion prong? I think the strongest evidence of insufficient evidence on the promotion prong is that there was a perfectly legitimate explanation for why Cabal decided to purchase this vehicle and finance it in his name on Washington's behalf, which is that Washington didn't have a driver's license, which is a necessity to register a car and to purchase insurance. And therefore, he needed someone to facilitate the transaction for him, even though he was going to be paying for it. And you can see that in A414 and A416 of the record, where that's the testimony that comes out from Washington himself. And when you have an innocent explanation like that, as this court said in cases like law, that simple, benign reason for the transaction is enough to overturn the conviction. If the court has any questions. So I have a question about this. So it may be true that there's an innocent explanation. Yes. But that doesn't mean that there's also not a non-innocent explanation. And where we are here is we have a jury that by hypothesis was properly instructed because there was no objection to the instruction. And if we assume that the jury was properly instructed, why can't we say that a rational jury could have inferred from knowledge that the SUV might be used for an illicit purpose, an intent that the SUV be used for an illicit purpose? Well, I think that that goes to the statutory text. And the statute makes very clear that for the promotion prong in particular, it has to be the specific intent. Right. And I'm sorry. I understand the question. I understand there's knowledge here and you can infer it. But where the statute is drawing a distinction between knowledge for the other parts of money laundering and is calling for specific intent, I think that you need more than just evidence of knowledge to find the defendant guilty of having that specific intent to promote the illegal activity. Really? So you couldn't have a case in which the prosecution introduces a ton of evidence of knowledge and then the jury specifically instructed you have evidence of knowledge. You have to conclude that the individual had the specific intent. And even though all the evidence is only of knowledge, and they conclude, well, the evidence of knowledge is so significant. And, yeah, there's a possible innocent explanation, but you have to choose between the two. And in the face of this degree of evidence of knowledge, we conclude that the knowledge is suggestive of intent. You can't have that. You just can't have that in this context. So I think that if you had a case that all you had was a mountain of knowledge, a mountain of evidence this person had knowledge and you had no innocent explanation, maybe in that case a jury could infer intent because there's just no evidence that there was any other intent that was in play. But where you have another proper intent, I think that this court has said in cases like law that that's enough to establish a reasonable doubt, and that unless the government can rebut and show that that intent wasn't actually a legitimate intent or wasn't actually what was motivating the parties, that that means that that's not enough to find a conviction, even if there's evidence the person had knowledge that this was part of an illegal scheme. The fact that there's an innocent explanation shows that there's not the intent. And how would we – you can hypothesize an innocent explanation in almost any situation, even if it was a firearm rather than a contraband. You can hypothesize an innocent explanation. And so how would this work in practice? Would the judge have to instruct a jury to determine whether there's an innocent explanation and then also instruct the jury that if you find that there's a possible innocent explanation, then you have to further determine that the innocent explanation is outweighed by the nefarious explanation? Well, first I think there would have to be some evidence introduced that there was an innocent explanation. I don't think that defense counsel, for example, in closing could just get up and hypothesize an innocent explanation. So there would have to be some evidence that there actually was an innocent explanation for this transaction. Then once you have that – Which is going to be easy to find. It's not going to be hard to do, right? Well – But anyway – It may be that in a lot of cases there will be innocent explanations, although I also think that in a lot of cases it may be easy for the government to rebut those innocent explanations. Is there significance here that the innocent explanation, that evidence came from the government's chief witness? I think that certainly helps and certainly makes it more plausible that the explanation is true and legitimate when it's the government's own witness who is both offering the innocent explanation and is also saying on the concealment prong in particular, it never even occurred to us to do concealment. That never even entered our minds. So I do think that you're exactly right, Judge Wilkins. When the government's own witness is offering up that kind of testimony, I think that makes it stronger that there's an innocent explanation here that needs to be taken seriously under this Court's cases like law. Could you also address the career offender enhancement? Oh, sure. I'd be happy to address the career offender enhancement. I think the answer on the career offender enhancement is that both sides now agree that under the force clause of the career offender enhancement, the offense, Woodruff's 1984 conviction, does not qualify as a career offender predicate. And that was the only theory that the government pressed below. It only argued the force clause. It wasn't until its response brief in this case that it actually raised that it may be the residual clause. And that's exactly what happened in Johnson v. United States in the Supreme Court, where a force clause case got up to the Supreme Court, and the government said in its brief, we think we're right under the force clause, but if you disagree with us, please remand and send it back for the district court to determine whether this qualifies as a predicate offense under the residual clause. And the Supreme Court in the decision written by Justice Scalia said, no, you made your choice to argue this as a force clause case rather than a residual clause case, and so you've now waived that issue, and you can't bring it up in front of us, and you can't bring it up on remand. The issue's foreclosed, and you can't prove he was a career offender or, in that case, an armed career criminal. Okay, great.  We'll give you some time back. May it please the Court. Peter Smith on behalf of the United States. I'll address the arguments that Appellant raised this morning, but I'm going to go in a slightly different order if that's all right with the Court. I'd like to start with the wiretap and end up with the sentencing claims. I just had a few brief points on the wiretap issue, which is Appellant's argument that there was insufficient necessity for the wiretap affidavit. The basic argument that Appellant made this morning seems to me waived. His argument is a Franks claim, essentially, that there were material omissions in the affidavit, and Appellant didn't raise that in the district court, so that argument is waived, and it's too late to make it in his reply or an oral argument. With respect to the Rule 609 claim, of course, we believe that the conviction would have been admissible under 609, but the Court doesn't need to address that. Loose is binding precedent. This Court has applied loose in the past. It's actually expanded the rationale of loose and applied it not just to the testimony of defendants but to defense witnesses as well. Can't this issue have been forfeited by the government? I'm not sure that it could have. It's certainly unfortunate we didn't raise this in our opening brief. That was an oversight on my part, and I take responsibility for that. But it's binding Supreme Court precedent, so I don't see it as the kind of thing where the government has some sort of equity in the fight and would waive it by not advancing it earlier. I don't see it as that kind of an argument. And although appellant— I mean, the government can forfeit arguments on appeal in criminal cases. Certain sorts of arguments. I would agree with that, Judge Wilkins, and I'm not sure that this is that sort of an argument. This is a case that would control, that would say the Court wouldn't reach the question, and there are other kinds of arguments that the government can't waive, like jurisdiction. So in this context, for example, if the government took the position before us or before an appellate court that said, we recognize that this is a case in which the defendant didn't testify. So under loose, one could conclude that the issue can't be reviewed. But this particular issue on the admissibility of this kind of prior conviction is an issue that affects the government in a broad array of cases and would actually like the Court of Appeals to resolve it. So it's not just forfeiture. It's actually invitation to decide the issue. Your view is that loose would tell the Court of Appeals that even though the government actually wants the issue resolved, the Court of Appeals can't get to it because of loose. I guess I would agree with that, yeah. You think so? Okay. Yeah. I mean, even if the Court weren't going to apply loose in the manner that we're suggesting, it would still go to the harmlessness of any error because the same principle would apply, that the harm to the defense case would be speculative because the defendant didn't actually testify. So you can look at it either on the error point or the harmlessness point, either way, and the result would be the same. If there are no additional questions about that, I'd like to move on to the money laundering point, excuse me, and then I'll talk about the sentencing issues. The money laundering conviction was supported by sufficient evidence here. And I guess to distill the government's argument down to its essence, at least as to the promotional prong of money laundering, appellant's argument at bottom is that under law, as long as he can put forward some sort of innocent explanation, he should prevail. And while we disagree with that reading of law, the simple factual response to that question is, here you had a much stronger inculpatory explanation, that appellant is caught on the wiretap discussing, Appellant Cobble is discussing with Woodruff buying bullets for Woodruff's gun. He's discussing buying drugs. And he's doing that at the same time they're talking about getting Woodruff a new car. Woodruff then turned around and used that same car in the next day or two. But just to be clear, what were the drugs that they were discussing? Right. They're talking about buying marijuana, which wouldn't be the charge. For personal use. It seems that way, yes. Right. So how do you get from there to knowledge that this is promoting the conspiracy to distribute heroin? Sure. Two responses. And one is that the drugs and the bullets shows that there is an innocent explanation, or at least not to the extent that appellant would claim. And then the second part of the answer, what is, Judge Wilkins, your question is what exactly is that evidence? And there's a lot of that evidence. And that would be that appellant Cobble and Woodruff had a very close relationship. Washington testified that Washington didn't have a job at the time, at the relevant time. He had no job. He was a lifelong drug dealer. He said that things were going like he told Cobble on the wiretap, things were going like he needed to go, that the jury could have inferred he was making money, that he was going to deposit money for the car. At the same time, they're talking about getting bullets. They're talking about buying drugs. So I thought it was kind of interesting that in your brief in the sections where you talk about the Cobble conviction, the relevant passages all speak in terms of Cobble knowing that Washington could use the SUV for the purpose of furthering his drug dealing. Right. And under the statute, that's not enough, right? And I know I'm not trying to, you know, hold you to the precise wording of your briefing, but what I'm trying to say is that the wording of your briefing is just indicative of a broader proposition, which is that it may well be that Cobble knew that the SUV could be used for an illicit purpose, but would you disagree that the jury needed to have found more than that? I don't disagree with that, Your Honor. And while at times we talked about knowledge, I think I have sort of like a two-part answer to your question. One is that the jury was properly instructed, and the language that you're pointing to in the government's brief reflects the charge to the jury. So first of all, the jury has to find that knowledge that the money came from drug distribution, that was the proceeds of drug trafficking. So it has to find that, and then it has to find that the transaction was structured or the use of the money was to promote, if we're talking about promotion or concealment, to promote drug trafficking. So here you have both knowledge and intention, and the arguments in the government's brief go to both, although we talked about knowledge, and I think that's because we have to show knowledge that the money came from drug trafficking, but the same points you raised in our brief showed that Appellant had the intention to basically buy the car for Washington to use in drug trafficking. What was the evidence that showed that Cobble had that intention beyond that Cobble had the knowledge? I'm sorry? What was the evidence that showed that Cobble had the intention that the SUV be used to further the drug trade beyond the evidence that Cobble knew that it could be used to further the drug trade? Right. I think that the jury would have to infer that, but I think there was a lot of evidence from which the jury could infer that. As the Court talked about earlier, if you have a mountain of evidence about knowledge, the jury can infer from that. And here you have a close relationship. So you could have more. I just want to make sure. You're right that purpose can be inferred from knowledge. You could also have direct evidence of purpose or even indirect evidence of purpose beyond knowledge, and I just want to make sure that there's nothing like that in this case. So your argument that the evidence is sufficient as to purpose is that there was lots of evidence of knowledge, and from that the jury could infer purpose. Right, and I'm happy to tick off the four or five most salient points, but I would agree with that, that that's the way our argument worked, and that's what we argued to the jury. The jury was properly charged, and we infer from their finding of guilt that they found intent, not just knowledge. So they did infer intent, and the co-defendant was a lifelong drug dealer. We had these conversations about things are going well for me. I can put money towards the car. They're talking about buying bullets, which is a non-innocent explanation. As soon as they buy the car or within a day or two, the co-defendant's using the car to sell drugs to Sandra Settle, and if you look at the timing of the chronology. So you can infer from that that Cabo would have known that, or not just would have known, but intended to promote drug trafficking. So we have our decision in law, and it's under the concealment prong, but we make the observation that because in money laundering you've got this potential conundrum in that you need to show not just that there were expenditures, because that's okay, but you need to show that the expenditures are illicit either under the concealment prong or in the promotion prong. And under that decision, we say in a situation in which there is an innocent explanation at work, then the government has to do work to discount the innocent explanation. Do you dispute that that same framework would apply here as well on the promotion prong? I guess so. Can you win if that same framework does apply? Yeah, I think that's an easier path for the government, because here you have to discount the innocent explanation. The innocent explanation that's been proffered on appeal is Cabo was just trying to do a favor for his friend or the guy who was raised like his brother, his co-defendant. And here, like I said, you have the wiretap conversations about getting bullets. You have them talking about drugs, albeit for personal use. You have the timing of the whole thing where there's a car wreck, the co-defendant needs a new car, and then a few days after the structuring of this transaction, he's using that same car to sell drugs. You have a lot of testimony from Washington about the fact that these transactions occur in cars. You have drug expert testimony saying this is how this conspiracy operated. So you have all of that working together, and the jury has got common sense. They've got to look at the totality of the evidence, add it together, weigh it, and they can draw inferences from that. So my last question along these lines, and I appreciate all the evidence you just outlined, is this, and then I'll stop with apologies for asking this series of questions. If you had the exact same circumstances and the item at issue is not an SUV but a phone, and it's just a phone that's given as a birthday gift, you could make all the exact same arguments and we'd be in exactly the same place. I think so. Yeah, I just think that would be a harder case because, for one, it's a birthday gift. You know, here I mentioned the drug sale to Sanders Settle a day or two after the buying of the SUV that's at issue. That's a transcript. It's at appendix page 419. The court wanted to look at that. The wiretap conversation I referenced is July 17th. It's referenced in the government's brief, and in the government's brief also is the conversation about things are going like I need it to go, which is, I mean, these are guys who grew up together. They know each other, and the co-defendant is saying to Cabell, look, things are going well for me. The jury is allowed to draw inferences from that, and I think that's sufficient. What do we take from the fact that the jury acquitted him of the drug conspiracy? Well, the government's argument, there are different elements and there's different requirements, so I guess that's one response. And the second is that the government's argument on the conspiracy count was that Cabell is a member of the drug conspiracy because he bought the car that Woodruff was going to use or Washington was going to use for drug trafficking. And, you know, the jury may have compromised on that. They may have felt that that was too thin a reed to support a conspiracy conviction. We don't know why the jury thought that. But that doesn't undercut the government's evidence on the money laundering count, which has different elements and has different requirements. If there are no further questions about that, I'll move to the sentencing claims. And I guess I'll also address this in reverse order. The career offender argument, the main argument appellants made this morning was that the government has waived its reliance on the residual clause under Johnson, and although I think that that is not the case because in Johnson the government affirmatively disavowed that, and that is not what happened here. You had a very complex legal environment where the other Johnson, the 2015 Supreme Court Johnson decision had come down and the government was uncertain about that and believed that that opinion, that that applied to the guidelines and therefore didn't make this argument. So that is distinguishable. But in any event, I'm not sure that the court even needs to reach that question because that goes to the error point. And here any error would be harmless because the district court made very clear, and it's cited in the government's brief, that it would have imposed the same sentence anyway for Woodruff. And that language was very stark. The parties had been arguing in those two transcript pages about their various positions and about the respective sentences that they thought were appropriate, and the district court said expressly, I would have given the same sentence anyway. So that would be our... Without the career of Henry Hansman. Yes, yeah. And I would say that that was shorthand for basically the district court was saying, look, I hear your argument's defense and I would have imposed the same sentence anyway. So do you think that in any case where the district court, let's say there's a dispute between the defendant and the government over the proper guidelines range, and the government says, well, it's 120 to 132 months, and the defense says, no, it's really 80 to 96 months, and the district court says, well, I agree with the government and I'm going to give the defendant, you know, let's say it's something within the defendant's range, proposed range. And if it turns out that really the proper range was the defense range, I would have given the same sentence anyway. All of those cases that come to us on appeal, we just say we don't really need to resolve that dispute because it's harmless. That's the way that we're supposed to deal with those cases. I think that that would be harmless, unless I misunderstand the question. I mean, if it was a different guideline range and both parties were wrong, it would be error, but it would still be harmless. So I think that's right. And what's your best precedent for us having done that in the past? Well, I guess offhand I'm thinking about plain error cases, but where the district court has made a statement like, you know, I understand the parties' sentencing arguments and, you know, there's a dispute about the range, but I would have given, I think this is the appropriate sentence, I would give it anyway. I can't think of the name of a case right now, but I think there's several decisions by a judge, authored by Judge Henderson, where a district court has made sort of categorical pronouncement like that, and this court has found the error to either be harmless or not to meet the plain error prejudice requirement. So I would say that would be. Well, we're not in plain error here. I know. I understand that. But the argument would be the same, that if the district court makes clear that, you know, regardless of the proper guideline range, I would have given the sentence, that error's got to be harmless, because whether the guidelines are correct or not, that goes to the error point, right? I mean, so if you remand it, the district court, there's no need to remand, I guess is what our argument is. Well, couldn't the district court, I mean, I'm an old district court judge, you know. Hearing this, if we rule this, wouldn't I, if I were a savvy district court judge, at the end of every sentencing just say to error-proof my sentencing? You know, there's been a lot of talk about different guidelines ranges, and regardless of what the guideline range really would have been, I would have given the same sentence. Why wouldn't I just say that at the end of every sentencing to make it bulletproof on appeal, so to speak? I guess they could, but it would have to be true, and it may not be true in every case. You know, it was true here, and it's true in some other cases that I can think of. What do you mean it would have to be true? You mean you would dispute the word of a district court judge? No, no, no. I mean that the district court judge wouldn't say that unless that, that you wouldn't have the district court saying that in every case, because it would have to believe, the district court would have to believe, that that was the appropriate sentence regardless of the difference about the guidelines. And that may not be the case in all ways. I mean the district court may want to give a within guidelines range sentence, and it may say, look, I want to give, like in your hypothetical, I want to give in the defense range, and it may be wrong. So I'm just saying that the situations where we have this arising may be more limited, where the district court says, look, the appropriate sentence is 80 months, which was the sentence here, no matter what. Like I hear all, I hear the arguments about the guidelines, I hear the arguments about the career offender, and you know, I don't care. I think the proper sentence is 80 months. I don't think there's a lot of cases where that happens. So I suppose then you would agree, if we were to adopt that rule, that it would apply against the government. So if the district court adopts a low guidelines range, the government asks for a much higher guidelines range, the district court sentences within the defendant's lower guideline range and says on the record, well, even if the government's right and the guidelines range is way higher, I'd still give the same sentence, and the government appeals. We would just rule against the government on harmlessness grounds, no remand. Yeah, I mean, I can't think of an instance where I would. I can't think of an instance where we've appealed in that circumstance, but, I mean, that would flow logically from our position. So, I mean, we didn't talk about that beforehand. I'm not sure that I want to, you know, maybe I'm missing something, but I think that that would be our position. I don't want to say that speaking on behalf of the Department of Justice, I believe that. If we didn't think your approach to the career offender statute was the right way to go, the enhancement, can you help us think about what the residual clause does here? Sure, sure. So the residual clause says, as it was at the time, because it's been deleted from the guidelines, so it says that a crime of violence would be, among other things, a felony offense that has a serious potential risk of physical injury to another. So our merits argument on this is that D.C. armed robbery, although it includes stealthy snatching, is such a crime because, like the Welch case in the 11th Circuit explains, the victim or the bystander may try and stop the defendant,  or through the confrontation ensues from a robbery, even if it's a stealthy sort of pickpocketing robbery. Doesn't that reading just completely swallow the force clause then? I mean, we're out of the world of force, at least logically here, right? Right. And so, at least the force clause. So I think that argument may prove too much. I don't think so, Your Honor, because, you know, look, these are two different clauses. The one is the residual clause. It's what's left over. I mean, I don't think the residual clause is limited by the elements clause because the reverse would be that you couldn't have anything in the root. I mean, that if it were, then there wouldn't be any need for the residual clause, right, because everything would either fall under the elements clause or not. So there's got to be some space where a crime wouldn't fit the elements clause, but it would fit the residual clause. And we would argue this is the kind of situation that, you know, the Welch – Yeah, right. It could, but, you know, we've explained our rationale. I think Welch supports that, and we've cited a bunch of other cases. I haven't seen cases from the defense saying, you know, on the back end of that, saying there's no risk of injury or violence coming from a pickpocket snatch. Maybe I'm wrong about that, but, you know, we cited a number of cases where courts have held that. Do we look just at the elements or do we look at the facts of this conviction? We agree that you would look at the – that you would employ the categorical approach, if that's what the court's asking. So you wouldn't look at the underlying facts. But in a pickpocketing snatch, yeah, I mean, you would employ the categorical approach. It's not any risk, right? I mean, it presents a serious potential risk of physical injury. Right. It's not any risk. Right. Okay. But, I mean, I guess I would say by analogy the Supreme Court has found sort of similarly serious risks in – I'm getting outside of what we briefed, but in the Johnson cases, you know, there are sort of – there's disputes even among the opinions in the Supreme Court about which crimes fall under the – and, you know, there are crimes like burglary that – like if you look at burglary as being something that has a risk of violence or injury, it's the same rationale. It's because somebody may try and stop the burglar from entering the home, right? Okay, great. This is all on Woodruff, and so we haven't talked about Stoddard because there's the question about – the antecedent question about whether you calculate drug quantity based on the individual defendant or on the conspiracy as a whole. Correct. And we haven't, as far as I know, talked about that issue yet either. Please do. Yeah. Right. And my leading question to get you to talk about that issue is this, which I take it that now the government is taking the position in all D.C. cases, at least in all D.C. cases, and I don't know, maybe elsewhere too, that the proper way to apply this provision is conspiracy-wide rather than defendant by defendant, even though you took the opposite position below? Yeah, we did take the opposite position below, and the judge, the district court, overruled our objection, did not give the jury instructions that we were asking for in the verdict form. So what we're doing now is defending the district court. Yeah, right. So I know you're doing that in this case. Are we doing that board? Yeah. I believe that we're still instructing line prosecutors per DOJ policy to go with the individualized – to suggest to the district court that it ought to use the individual method. Oh, so even in D.C., so this is a one-case wonder. Your argument in this case is a one-case wonder. I mean, that's – It's actually contradicted by the argument you're making in other cases, even in the same jurisdiction. Yeah, I don't know. I'm going to have to go back and talk about that because we didn't talk about that in preparing for the argument, and that seems – now it seems quite obvious to me. But – so maybe our arguments in this case haven't caught up with the rest of the office, but – Or vice versa. Yeah, or vice versa. Yeah. But the reason that this came about, and, you know, we will address that internally, but it was because, you know, we did urge the district court to do something, but it didn't do that, right? Sure. So now we're in the position of defending what the district court did, and we give reasons why we think that – Yeah. I mean, you didn't have to defend what the district court did. Obviously, the government doesn't always do that. No. There is such a thing as confessing error. Yeah, that's correct, but in the government – Some would say that's a noble thing to do. Well, the government has taken this position elsewhere. So like in the Sixth Circuit, for example – Right, because you've got a court of appeals decision there. Right. So we were simultaneously litigating the same issue in the same posture here and in the Sixth Circuit, as Appellant noted earlier today. The Sixth Circuit panel decision is still there, and we rely on it. I think it's called – it's Robinson, I think, is that case, and that gives the rationale that we articulate in our brief. It's the same one. You know, 841 and 846, the plain language, indicates that you have a liability predicated on the actions of the different conspirators. You just have liability. And here you have the jury making a finding, a finding of 100 grands or more. So this may be a sort of hybrid of the cases where you might have the instance where you don't have that sort of finding by the jury. But we were litigating in those two different venues at the same time, and that's why it came to you in this – Yeah, I guess I'm just making the point that it sounds like then it may be the case that you're making an argument in this brief and in this case that your office is not actually making. Yeah, I don't actually know the answer to that. Okay. And I didn't dig into that in preparation for argument, but it's something that I want to find out. Okay, so let's assume that – let's just put that question to the side. Then on the merits of the question, whether your argument in this case is right or the argument that your office is making elsewhere is right, let's talk about that. As to that, if we put aside the statutory maximum issue and how the courts of appeals deal with the statutory maximums, if we just look at the way this ordinarily works in conspiracy land, why isn't it the case that Pinkerton, as is normally the case, just sets the outer perimeter of responsibility in the conspiracy sphere? And what you're asking us to do in this case goes even beyond Pinkerton. It does – it is different from Pinkerton, and my response is that Pinkerton – inapplicable is the wrong word, but Pinkerton is just a separate issue. It expands liability after the fact for crimes committed in furtherance of the conspiracy that are reasonably foreseeable. And here we're talking about the conspiracy charge itself, so that's different from Pinkerton. And we're also, in our view, talking about statutory construction. We're talking about what's the plain language of the statute. And the plain language of the statute is not limited by Pinkerton principles, for example. Pinkerton is a totally separate question. What is the conspirator on the hook for? After they enter the conspiracy, which is the antecedent question, what other crimes that are committed by co-conspirators can be attributed? But in a drug conspiracy, you could have, you know, a dozen, two dozen different people who are members of the conspiracy, some for different time periods, some might be a member for a couple months and then they're locked up in jail and the conspiracy goes on, et cetera. So they might be all liable of being members of the same conspiracy writ large. But here the question is, it's a conspiracy to distribute what quantity of drugs? And how can it be, other than what we said in law, citing a number of circuits, that we have to look at what's reasonably foreseeable for each defendant to know how to attribute the quantity of the drugs from the conspiracy that is attributable to them or that they should be held responsible for?  One is that the jury did find that the conspirators were responsible for 100 grams. Well, it found that the language from the jury instructions didn't ask anything about reasonable foreseeability. That's right. It just says whether the government proved that the amount of the mixture or substance containing heroin that was a subject of the conspiracy was 100 grams or more. Right. So there you have a finding by the jury about the object of the conspiracy being 100 grams or more. So I guess that's in part my answer. The other part of my answer is that our position, which is setting aside Pinkerton and not looking at reasonable foreseeability, is consistent with conspiracy liability in that you can be a member of a conspirator in the way that your hypothetical envisions without knowing the precise type of illegal drug the conspiracy is distributing or the quantity. The liability attaches regardless. It's in agreement to distribute illegal drugs. So let's suppose the facts were that one of the defendants joined the conspiracy and then was arrested and locked up for an unrelated charge and was in jail for the remainder of the time of the conspiracy and a total of 100 grams or more of heroin was sold, but it's undisputed that 90 grams of it were sold after the defendant was put in jail. What would we do with that defendant? Well, unless that defendant going to jail somehow withdrew that defendant from the conspiracy, I think that the defendant would be on the hook for that amount. But here you don't have to. So he'd still have to mail in a letter or something to withdraw from the conspiracy. I guess, or, you know, or avail him or herself of the safety valve, for example. But here I don't think this case is quite that difficult because you have, at least with respect to Woodruff, he physically possessed more than 100 grams of heroin. So that's a harmless error argument. Right. I think the questions that are being asked by Judge Wilkins and the rest of us don't get to harmless error yet. Right. I mean, I think the defendant would be on the hook for that. I think that's the way conspiracies operate. By analogy, you know, they don't have to know the amount of drugs that are distributed or even the drug itself, as long as it's an illegal drug. But it has to be reasonably foreseeable. Right?  Well, no, because it wouldn't be – that Pinkerton would be if – only if it's an additional crime, right? Not if it's the underlying conspiracy. I thought you were talking about responsibility for actions taken by co-conspirators. Isn't that – Then it would be. Yeah, but the conspiracy charge arises from the agreement. Yeah, yeah. Right? Oh, I didn't realize you were talking about the agreement. So what is the evidence that when Woodruff and Stoddard joined the conspiracy, that they were joining a conspiracy that involved the trading of more than 100 grams of heroin? Yeah, I think that, you know, the same arguments that the parties have made this morning, on page 66 of the government's brief, we, you know, set out the jury verdict form. And I think that the findings that the jury made that are subsets of the overall question, do you find liability on conspiracy, those subset questions are, did they – what, you know, what drug was it? It was heroin. How much? 100 grams? So I'm a little bit confused just where we are conceptually in the argument, because as I understood the way this is laid out, the difference between your approach and the defendant's approach is that under your approach, a defendant is held responsible for the drug quantity that's attributable to the conspiracy as a whole. Correct. And it doesn't have to be tethered to the individual defendant. Now, if you look at the other approach, which is that it has to be tethered to the individual defendant, there's two ways in which that can happen. One is Pinkerton, or a Pinkerton concept, so you say something that's reasonably foreseeable. And the other is you look at the scope of the agreement that the defendant himself entered into. Right. And with respect to that, if the quantity exceeds the amount, then of course the defendant's on the hook for that. Right. Is that what you're talking about? Well, I took the course question to be the latter. Like was there evidence here of an agreement to distribute a certain quantity of drugs? So I was responding to that. That may not have been the question, but that was the question I was trying to respond to. And when you're responding to that question, are you saying that therefore we don't even get to the question that divides you and the defendants? I guess I took the court to be suggesting that earlier. Okay, yeah. I didn't understand. Okay, so I may have misunderstood the question and the subsequent argument. And I didn't understand you to be making that argument in your brief either. No, no, no, no. And it could be approved on that basis. No, that's right. Your argument is that we don't care about what's attributable to the individual defendant. It doesn't matter as long as the conspiracy as a whole was responsible for 100 or more. That's right, and that's what the district court found here. That was the decision of the district court, that it didn't really matter, and the parties continued to argue about who was responsible for what, and the district court said that that doesn't matter. And that's the position you're defending, so it doesn't matter. You're not saying that when the defendants entered into the conspiracy, they knew that they involved 100 or more by virtue of the agreement itself, that we wouldn't? I would agree that is not a load-bearing part of our merits argument. But I understood the court to be saying, hey, look, by the way, you have a jury finding here of 100 grams, because the charge, the indictment is 100 grams, and the jury verdict form is 100 grams. True, but as we understand the verdict form, it's that that's what the conspiracy as a whole involved. Yeah, that's how you understand it too. Yeah, although you can read it. I think it can be read differently. I think it can be read that the agreement was – But you're not making that – I didn't agree. You didn't make that argument in brief, so we shouldn't – okay. Right. I just – I thought that that's what the court was suggesting. Okay, yeah. Okay, great. We have the government's argument. Okay, thank you very much. I urge the court to affirm the judgment in the district court. Thank you. Mr. Wilcox, how much time do you think you need to rebut, just to rebut this? Can I try for five minutes, and hopefully I can do it in less? We'll give you four, just to – Perfect. Thank you, Judge Griffith. Aim high and hope for the best. So I'll take the arguments in reverse order, starting with where the government left off. So I think that – I think that the first point is, as you said, Judge Griffith, and this is really a one-case wonder, their entire argument that they're making here. Even in the Sixth Circuit, in the en banc briefing there, when they're asking the Sixth Circuit not to take the case, they said, oh, this is an unimportant issue because DOJ policy is that we do the individual approach which we're advocating here. Please don't take it en banc. Now, the Sixth Circuit disagreed, but that just, again, shows that the government everywhere, except for in this case, agrees with the approach that we're advocating for here. And that's because it's completely consistent with the background principles. That's interesting, but it's not dispositive. Well, it's not – We have to – No, I completely agree with that, Judge Griffith, but I think it's illustrative that the reason why they're taking that position everywhere is because it's completely consistent with the background principles of conspiratorial liability that across – that apply in cases across the board. And as the Supreme Court has said in cases like Lexmark and B&B Hardware and Astoria Federal Savings, when a statute doesn't specifically address an issue, courts can presume that Congress legislated against the backdrop of what the common law rule is. And here that common law rule is the approach that we've adopted and all the other circuits have adopted. And I'll also just touch briefly on harmlessness. I think everyone agrees that for Stoddard, that if you agree with our approach, the air here was not harmless. For Woodruff, the air still is not harmless. The only evidence linking him to 100 grams or more of heroin was the testimony of Washington, whose testimony has significant credibility findings. There was no physical evidence actually linking him. And concluding that maybe the jury didn't credit Washington's testimony wouldn't be inconsistent with their verdict because there was evidence from people like Sandra Settle, as we discussed towards the end of our brief, that talked about how they, in the course of their conspiratorial agreement, in which they never talked or dealt with Woodruff or Stoddard, personally dealt with more than 100 grams. So the jury could have gotten to 100 grams for the conspiracy as a whole without finding that Woodruff himself was actually involved with 100 grams or more. Turning to the armed career criminal issue, just to touch briefly on that, once again, that's not a harmlessness issue. The government keeps on saying that the district court actually said that the issue made no difference. But you look at A741 where it actually touches on this. What the district court says at lines 11 and 12 is, for the record, I would impose the same sentence if no five-year mandatory minimum had applied here. So it's not saying anything about the armed career criminal issue. And even with respect to the mandatory minimum, it's making that statement because it misunderstood that under the guidelines, it has to make individual findings about drug quantity, as we talk about in our brief. Turning to the money laundering very, very quickly, I think you're exactly right, Judge Wilkins, that the jury's finding of acquittal here on the drug conspiracy is very hard to reconcile with the finding that there was sufficient evidence for the promotion prong of money laundering here. As the government said, its entire theory for the drug conspiracy was, well, he helped purchase this SUV to further the aims of the conspiracy, and the jury disagreed with that finding. And the innocent explanation that the government tries to swat away here came from its own witness who was cooperating with the government. And most of the testimony it's pointing to either has no specific link to the car, like the fact that apparently Cobble may have been purchasing some marijuana for personal use or may have been doing other things with Washington, and also touches generally on just putting money towards the car. He's saying things like, things are going well, so I'm going to have enough money to make the payment. That just shows that he's spending, that at most shows he's spending the illegal proceeds here, which this court has made clear is not money laundering. Spending the illegal proceeds by themselves does not amount to money laundering. And then finally, just touching really quickly on the Rule 609 issue, we think that the government waived this argument, and certainly the type of argument the government can waive. This is not a jurisdictional issue. This is just an evidentiary objection like any other evidentiary objection, and any other issue that the government can waive. And on harmlessness, just to make my very final point, Judge Griffith, it's not harmless. Unlike in the Supreme Court case, there was extensive evidence that Woodruff wanted to testify in his own defense. There's very weak evidence that he was involved in the conspiracy entirely on Washington, and Woodruff would have been able to rebut that testimony and would have been able to put on evidence of his own defense. And as this court said in the Shaheen case, whenever a district court ruling interferes with a defendant's opportunity to put on a defense, that error is not harmless. So we'd ask you to reverse the convictions here or at a minimum remand for resentencing for both Soddard and Woodruff. Thank you. Thank you very much. The case is submitted. Mr. Wilcox, you were appointed by the court to represent the appellants in these cases, and we thank you for your assistance. Thank you, Your Honor.
judges: Griffith, Srinivasan, Wilkins